**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| KEVIN B. HOLSTON, |
| Plaintiff, |
| v. |
| JANET YELLEN,[1] Secretary of Treasury, |
| Defendant. |

Civ. Action No. 20-3533 (EGS)

**MEMORANDUM OPINION**

Plaintiff Kevin B. Holston ("Mr. Holston") brings this lawsuit against Defendant Janet Yellen ("Defendant"), Secretary of the Treasury, under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, *et seq.*, alleging hostile work environment and retaliation based on race.[2] *See generally* Am. Compl., ECF No. 9.

Pending before the Court is Defendant's Motion to Dismiss, ECF No. 19-1. Upon careful consideration of the motion, opposition, reply, the applicable law, and for the reasons

---

[1] Janet Yellen, Secretary of the Treasury, is automatically substituted as Defendant under Federal Rule of Civil Procedure 25(d).

[2] In his Opposition briefing in response to Defendant's Motion to Dismiss, Mr. Holston withdrew Count I in which he alleged discrimination based on race. *See* Pl.'s Opp'n, ECF No. 21 at 18.

1

explained below, Defendant's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART.**

I.    **Background**

      A.    **Factual**

The Court assumes the following facts alleged in the complaint to be true for the purposes of deciding this motion and construes them in Mr. Holston's favor. See *Baird v. Gotbaum*, 792 F.3d 166, 169 n.2 (D.C. Cir. 2015). Mr. Holston was a federal employee for 30 years, and for 20 of those years he served as a Criminal Investigator/Special Agent ("SA") for the U.S. Department of the Treasury ("Agency"), Treasury Inspector General for Tax Administration ("TIGTA"), working for the Forensic and Digital Science Library ("FDSL"). Am. Compl., ECF No. 9 ¶ 27. Mr. Holston received (1) "Exceeded" performance appraisals for 2016, 2017, and 2018; (2) "Individual Cash Awards" in 2015, 2017 and 2017; (3) "Individual Time-Off Awards in 2015 and 2018; and (4) letters of recognition from the President of the United States, TIGTA, the Department of Justice, and other federal agencies. *Id.* ¶¶ 28-30.

Mr. Holston's first line supervisor was Mr. Robert Lesnevich, his second line supervisor was Mr. Jeffrey Long, and his third line supervisor was Mr. James Jackson. *Id.* ¶ 33.  All three are white males. *Id.* From October 1, 2015 until June 2019,

Mr. Holston was the only African American male SA within his three supervisor's lines of supervision. *Id.* ¶ 37.

From October 1, 2016 until September 30, 2017, Mr. Holston was "repeatedly denied the same training and training opportunities that his white peers were provided." *Id.* ¶ 38. For example, he was denied specialized computer forensics and other high-tech training that his peers received or were receiving. *Id.* When, as a result of the denial of relevant training, Mr. Holston received a score of 89%, Mr. Lesnevich counseled him for failing to achieve a perfect score. *Id.* ¶ 39. However, the industry standard does not require a perfect score. *Id.*

In March 2017, Mr. Holston and a colleague submitted an email to a Human Resources Assistant, copying Mr. Lesnevich, regarding Desk Audit Procedures. *Id.* ¶ 40. Mr. Holston and his colleague made the inquiry after learning that in March 2016, two white peers with the same duties and responsibilities as Mr. Holston and his colleague were promoted to GS-14. *Id.* As a result, Mr. Holston and his colleague were the only special agents within DFS who remained at the GS-13 level. *Id.* Mr. Holston and his colleague followed up with Mr. Lesnevich and Mr. Jackson on May 18, 2017. *Id.* ¶ 41.

On July 17, 2017, Mr. Holston was having lunch at a restaurant in Beltsville, Maryland at which Mr. Lesnevich and Kathleen Farrell, Mr. Lesnevich's Quality Assurance Manager,

were also dining. *Id*. ¶ 42. After the latter finished their lunch, Ms. Farrell greeted Mr. Holston and his companions, but "Mr. Lesnevich walked past [Mr. Holston's] table without saying a word and departed the restaurant." *Id*. The next day, Mr. Lesnevich disclosed sensitive, confidential personnel information about Mr. Holston to Kevin Trebel, a peer and non-supervisor of Mr. Holston. *Id*. Thereafter, on or about July 19, 2017, Mr. Lesnevich disclosed information about, among other things, Mr. Holston's participation in the Agency's Health Improvement Program ("HIP") and his alleged misuse of his Government Owned Vehicle ("GOV") to four TITGA employees, none of whom had a need to know the information. *Id.* ¶ 47.

On or about July 24, 2017, Mr. Holston complained about the disclosures to Mr. Lesnevich's first-level superior and asked to be transferred or removed from Mr. Lesnevich's line of supervision. *Id*. ¶ 49. However, the supervisor took no action. *Id*.

On or about January 23, 2018, Mr. Holston overheard Mr. Lesnevich disclosing to two TIGTA employees who had no need to know, private, sensitive information regarding an email exchange between he and Mr. Holston in which Mr. Lesnevich threatened to report Mr. Holston to the Internal Affairs Department ("IAD") for alleged violations of the relevant time and attendance policy and integrity-related policies. *Id*. ¶ 52. Mr. Holston

4

interrupted the conversation and in a later meeting with Mr.
Lesnevich learned that he had been promoted to a GS-14 position.
*Id.*

On January 24, 2018, Mr. Holston filed an IAD Complaint
against Mr. Lesnevich based on the July 19, 2017 and January 23,
2018 disclosures, and alleging whistleblower reprisal and a
pattern and practice of racial bias. *Id.* ¶ 53. Thereafter, on
February 8, 2018, Mr. Lesnevich filed a meritless IAD Complaint
against Mr. Holston, contending that: (1) Mr. Holston misused
his GOV; (2) violated time and attendance policies on or about
January 22, 2018; and (3) engaged in certain improper acts or
omissions. *Id.* ¶ 55. However, prior to the filing of the IAD
Complaint, and as of February 1, 2018, Mr. Lesnevich had
received an email from TIGTA counsel stating that in her
opinion, Mr. Holston had not violated time and attendance or
travel voucher reimbursement policies. *Id.* ¶ 57.

On or about January 28, 2018, Mr. Lesnevich threatened to
charge Mr. Holston with AWOL while Mr. Holston was on approved
official government travel. *Id.* ¶ 50. On January 28, 2018, Mr.
Holston sought and received medical treatment as a result of the
workplace stress he was experiencing. *Id.* ¶ 51. He was
diagnosed, for the first time in his life, with "physical and
mental train related to work," palpitations, hypertension, and
abnormal electrocardiogram. *Id.* at n.8. He continued to receive

5

medical treatment for conditions attributable to the workplace stress until October 3, 2019. *Id.*

On or about February 21, 2018, Mr. Holston contacted the Agency's EEO counselor. *Id.* ¶ 4. On May 30, 2018, Mr. Holston filed a Formal Complaint for Discrimination. *Id.* ¶ 59. Thereafter, on July 12, 2018, the Assistant Inspector General for Investigations ("AIGI") issued to Mr. Holston a letter of counseling, which Mr. Holston alleges was meritless. *Id.* ¶ 59.

On July 12, 2018, the AIGI issued a Letter of Reprimand to Mr. Lesnevich for the July 19, 2017 disclosure in response to Mr. Holston's IAD Complaint. *Id.* ¶ 58. On the same day, Mr. Ruben Florez issued to Mr. Holston a meritless letter of counseling. *Id.* ¶ 59.

On or about July 25, 2019, Mr. Holston applied for entitlements and protections under the Family Leave Medical Act (("FMLA") "due to the trauma and severe stress caused by the workplace hostility" and thereafter was prescribed medication and advised to seek mental/emotional services through employee assistance. *Id.* ¶ 60. His request for FMLA protections was initially denied, but then reversed by TIGTA's Office of Mission Support. *Id.* ¶ 62.

On August 1, 2019, the Agency subjected Mr. Holston to a meritless internal investigation regarding his 2016 tax return. *Id.* ¶ 61.

On or about August 12, 2019, Mr. Holston was placed on "light or limited duty" and his handgun and raid badge were seized. *Id.* ¶ 63. Mr. Holston intended to work as SA until his mandatory retirement age of 57, but was constructively discharged on December 31, 2019 at 50 years of age. *Id.* ¶ 68.

### B.   Procedural

On April 26, 2021, Defendant filed the Motion to Dismiss. *See* Mot. to Dismiss, ECF No. 19-1. Mr. Holston filed his Opposition brief on May 17, 2021, *see* Opp'n, ECF No. 21; and Defendant filed the Reply brief on May 27, 2021, *see* Reply, ECF No. 22. The motion is ripe and ready for the Court's adjudication.

## II.  Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007) (internal quotation marks omitted).

Despite this liberal pleading standard, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (internal quotation marks omitted). A claim is facially plausible when the facts pled in the complaint allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The standard does not amount to a "probability requirement," but it does require more than a "sheer possibility that a defendant has acted unlawfully." *Id.*

"[W]hen ruling on a defendant's motion to dismiss [pursuant to Rule 12(b)(6)], a judge must accept as true all of the factual allegations contained in the complaint." *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (internal quotation marks omitted). "In determining whether a complaint fails to state a claim, [the Court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Schl.*, 117 F.3d 621, 624 (D.C. Cir. 1997). In addition, the court must give the plaintiff the "benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## III. Analysis

### A. Administrative Exhaustion

Before bringing suit under Title VII, an aggrieved party is required to timely exhaust his administrative remedies. *See Harris v. Gonzales,* 488 F.3d 442, 443 (D.C. Cir. 2007); *Washington v. Wash. Metro. Area Transit Auth.,* 160 F.3d 750, 752 (D.C. Cir. 1998). These exhaustion requirements are not jurisdictional, but rather operate as a statute of limitations defense. *Artis v. Bernanke,* 630 F.3d 1031, 1034 n.4 (D.C. Cir. 2011) (citation omitted). "Because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it." *Bowden v. United States,* 106 F.3d 433, 437 (D.C.Cir.1997) (citation omitted).

> The Supreme Court's 2002 decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002), has led many courts to change how they analyze Title VII's requirement that a plaintiff first exhaust [his] administrative remedies before filing suit. In particular, since *Morgan*, district judges in this Circuit have split on how to apply this requirement where the plaintiff has alleged discrete acts of retaliation that occurred after the filing of the EEO charge, as Redding does here. *See generally Poole v. U.S. Gov't Publ'g Office*, 258 F. Supp. 3d 193, 201-02 (D.D.C. 2017) (discussing split); *Mount*, 36 F. Supp. 3d at 84-85 (similar). A majority of the judges who have addressed the issue have held that the plaintiff must separately exhaust each subsequent discrete act of retaliation. *See Poole*, 258 F. Supp. 3d at 201; *Mount*, 36 F. Supp. 3d at 84-85. A minority, however, have

> held that a plaintiff need not separately
> exhaust subsequent acts of retaliation that
> are "like or reasonably related to" the acts
> of retaliation described in the EEO charge.
> *See Poole*, 258 F. Supp. 3d at 201-02; *Mount*,
> 36 F. Supp. 3d at 85-86.

*Redding v. Mattis*, 328 F. Supp. 3d 136, 139-140 (D.D.C. 2018).
Under the second approach, the analysis "centers on whether the
allegations that were specifically put before the agency and the
new allegations the plaintiff seeks to litigate constitute the
same cause of action and are factually similar such that they
would be discovered during the agency's investigation." *Mount*,
36 F. Supp. 3d at 85-86.

### 1. Mr. Holston's EEO Activity

Mr. Holston first contacted the Agency's EEO counselor on
or about February 21, 2018, Am. Compl., ECF No. 9 ¶ 4; and filed
a Formal Complaint of Discrimination ("EEO Complaint") on or
about May 30, 2018, *id*. ¶ 7.

In his EEO Complaint, Holston alleges that he was
discriminated against and harassed based on his race when: (1)
his manager treated him differently from his co-workers with
regard to (a) training opportunities, (b) the manner in which a
proficiency exam was scored, (c) scrutiny of his investigative
activities, (d) travel status notification, and (e)
participation in the HIP; (2) his manager discussed with other
managers, and in some instances Mr. Holston's co-workers, (a)

how to target Mr. Holston for disciplinary action, (b) Mr. Holston's alleged misuse of the HIP, his government vehicle, mishandling evidence, abusing time and attendance policies; and (3) his manager reported him to IAD for alleged misuses detailed at (2)(b) above. *See* Individual Complaint of Employment Discrimination ("EEO Complaint"), Exhibit 2 to Mot. to Dismiss, ECF No. 19-5 at 3, 5.[3]

### 2. Four of the Hostile Work Environment Claims Were Not Timely Presented to the EEO Counselor

An employee of the federal government who believes he or she has been subject to discrimination is first required to "initiate contact" with an EEO counselor within forty-five days of the allegedly discriminatory action. 29 C.F.R. § 1614.105(a)(1); *see Steele,* 535 F.3d at 693. The forty-five day period begins to run when an employee has a "reasonable suspicion" of a discriminatory action. *Adesalu v. Copps,* 606 F. Supp. 2d 97, 102 (D.D.C. 2009). If the matter is not resolved informally, the counselor shall inform the employee in writing of the right to sue, and the employee must file a formal complaint of discrimination with the agency. *See* 29 C.F.R. §§ 1614.105(d), 1614.106(a)-(c); *Bowie v. Ashcroft,* 283 F. Supp. 2d 25, 33 (D.D.C. 2003). The agency must then investigate the

---

[3] When citing to electronic filings throughout this Memorandum Opinion, the Court cites to the ECF header page number, not the original page number of the filed document.

matter, after which the complainant may demand an immediate final decision from the agency or a hearing before an EEOC administrative judge. *See* 29 C.F.R. §§ 1614.106(e)(2), 1614.108(f). A complainant may file a civil action within ninety days of receiving a final decision from the agency or after a complaint has been pending before the EEOC for at least 180 days. *See* 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407; *Price v. Bernanke,* 470 F.3d 384, 389 (D.C. Cir. 2006).

Defendant argues that four of Mr. Holston's claims must be dismissed because they occurred more than 45 days before he first contacted an EEO counselor on February 21, 2018. Def.'s Mot., ECF No. 19-1 at 14-15.[4] These claims are: (1) denial of training requests during the 2015 to 2017 timeframe, *see* Am. Compl., ECF No. 9 ¶ 38; (2) the unfairly administered 2017 proficiency exam, *see id.* ¶ 39; (3) Mr. Lesnevich discussing with Mr. Holston's co-workers his alleged misuse of the HIP, *see id.* ¶¶ 42, 45-47; and (4) denial of training requests in 2017, *see id.* ¶ 38.

Mr. Holston responds that the Agency was on notice of his EEO concerns as of July 24, 2017, when he raised his concerns with Mr. Jackson. Pl.'s Opp'n, ECF No. 21 at 17. He also points to his January 24, 2018 IAD Complaint against Mr. Lesnevich,

---

[4] The Court does not address claims included in the EEO Complaint that are not included in the Amended Complaint.

arguing that with this complaint he notified "Agency of the fact that his claims were ongoing and repeated in nature." *Id*. at 18. Mr. Holston's response is beside the point.

> "[C]ourts may treat otherwise untimely complaints as timely if the employee 'did not know and reasonably should not have known that the discriminatory matter or personnel action occurred.'" *Hairston v. Tapella*, 664 F. Supp. 2d 106, 114 (D.D.C. 2009) (quoting 29 C.F.R. § 1614.105(a)(2); *see also Adesalu v. Copps*, 606 F. Supp. 2d 97, 101–02 (D.D.C. 2009) ("if plaintiff 'knew or should have known' of the nonpromotion decisions before ... 45 days prior to this initial contact, they are time-barred." (citation omitted)). This is so because "[a]n overly technical approach would improperly impede the goal of making federal employment free from proscribed discrimination." *Loe v. Heckler*, 768 F.2d 409, 417 (D.C. Cir. 1985); *accord Hairston*, 664 F. Supp. 2d at 114. However, "[t]he court's equitable power to toll the statute of limitations will be exercised only in extraordinary and carefully circumscribed instances." *Smith–Haynie v. District of Columbia*, 155 F.3d 575, 579–80 (D.C. Cir. 1998) ( *Mondy*, 845 F.2d at 1058 n.3). It is the burden of the party seeking equitable tolling to prove "reasons that would support ... tolling of the 45-day time limit."

*Vasser v. McDonald*, 228 F. Supp. 3d 1, 12 (D.D.C. 2016). Mr. Holston makes no argument that equitable tolling is warranted here. *See generally* Pl.'s Opp'n, ECF No. 21. Accordingly, Defendant's Motion to Dismiss is **GRANTED IN PART** and the four claims listed above are **DISMISSED**.

### 3. Five of the Retaliation Claims Were Not Administratively Exhausted

Mr. Holston states that his actionable retaliation claims are: (1) Mr. Lesnevich filed a meritless IAD Complaint against Mr. Holston on February 8, 2018, 15 days after Mr. Holston filed his IAD Complaint, Am. Compl., ECF No. 9 ¶ 54; (2) the meritless letter of counseling issued by Mr. Florez on July 12, 2018, *id.* ¶ 59; (3) the August 1, 2019 Tax Investigation; *see id.* ¶ 61; (4) denial of FMLA request on August 8, 2019; *id.* ¶ 62; (5) placement on "light duty" seizure of his credentials and firearm on August 12, 2019, *id.* ¶¶ 1, 68; and (6) constructive discharge on December 31, 2019, *id.* ¶¶ 1, 68.

Defendant argues that Mr. Holston failed to exhaust his administrative remedies with regard to these claims because he has not alleged that his EEO Complaint included a retaliation claim and he neither amended nor supplemented his EEO Complaint with a retaliation claim. Def.'s Mot. ECF No. 19-1 at 12. Mr. Holston does not dispute that that his EEO Complaint did not allege retaliation, nor that he did not amend or supplement his EEO Complaint. *See generally*, Pl.'s Opp'n, ECF No. 20. The Court can review Mr. Holston's EEO Complaint without converting the motion to dismiss into one for summary judgment as it is necessarily incorporated into the complaint. *See*

14

*Xavier Parochial Schl.*, 117 F.3d at 624. The EEO Complaint reflects that Mr. Holston did not check the "retaliation/ reprisal" box. *See* EEO Complaint, Exhibit 2 to Mot. to Dismiss, ECF No. 19-5 at 4. Furthermore, the incidents listed do not include the February 8, 2018 incident, the only alleged retaliatory incident that occurred prior to the filing of his EEO Complaint. *See generally id*. Under the majority approach, therefore, Mr. Holston did not exhaust his retaliation claims.

Mr. Holston, however, argues that the Court should apply the second approach, arguing that the retaliation claims that arose after he filed his EEO Complaint are "excused from the exhaustion requirement" because they "are reasonably related to" his allegations of hostile work environment. Pl.'s Opp'n, ECF No. 21 at 18. Under this approach, the analysis "centers on whether the allegations that were specifically put before the agency and the new allegations the plaintiff seeks to litigate constitute the same cause of action and are factually similar such that they would be discovered during the agency's investigation." *Mount*, 36 F. Supp. 3d at 85-86. "In *Payne v. Salazar*, 619 F.3d 56 (D.C. Cir. 2010), the D.C. Circuit concluded that the 'like or reasonably related' test (assuming, without deciding, that it remained good law) 'necessarily' did not encompass acts of retaliation occurring after end of the administrative investigation, because the investigation could

not have uncovered them." *Redding*, 328 F. Supp. 3d at 140
(quoting *Payne*, 619 F.3d at 65.).

Here, the Agency's investigation of Mr. Holston's EEO
complaint concluded on November 14, 2018. Am. Compl., ECF No. 9
¶ 9. Four of the alleged retaliatory acts occurred after the
conclusion of the Agency's investigation: (1) the August 1, 2019
tax investigation; (2) the August 8, 2019 denial of FMLA leave;
(3) the August 12, 2019 placement of Mr. Holston on light duty
and seizure of his raid badge and handgun; and (4) the December
31, 2019 constructive discharge. Mr. Holston claims that all of
his retaliation claims "grow out of the claims asserted in the
administrative complaint and likely would have come within the
scope of any investigation that reasonable could have been
expected to result from the investigation." Pl.'s Opp'n, ECF No.
21 at 20. However, he does not explain how this could be since
the investigation concluded before those incidents occurred.
Accordingly, the Court concludes that Mr. Holston failed to
exhaust his administrative remedies as to these four retaliation
claims.

This leaves two incidents—the February 8, 2018 incident,
*see id*. Am. Compl., ECF No. 9 ¶¶ 54-58; and the July 12, 2018
incident, *see id*. ¶ 83. Mr. Holston points to his January 24,
2018 IAD Complaint against Mr. Lesnevich in which he alleged a
"pattern and practice of racial bias," Pl.'s Opp'n, ECF No. 21

at 18 (quoting Am. Compl., ECF No. 9 ¶ 53; arguing that "[b]y using 'pattern and practice' language and reiterating his prior discrimination complaint, [Mr. Holston] duly notified the Agency of the fact that his claims were ongoing and repeated in nature," *id*. This argument is beside the point, however, because the Court's analysis "centers on whether the allegations that were specifically put before the agency [***in the EEO Complaint***] and the new allegations the plaintiff seeks to litigate constitute the same cause of action and are factually similar such that they would be discovered during the agency's investigation." *Mount*, 36 F. Supp. 3d at 85-86 (emphasis added).

The first allegation is that on February 8, 2018, Mr. Lesnevich filed an IAD Complaint against Mr. Holston, contending that: (1) Mr. Holston misused his GOV; (2) violated time and attendance policies on or about January 22, 2018; and (3) engaged in certain improper acts or omissions. Am. Compl. ¶ 55. This is in part the same allegation as in paragraph six of Mr. Holston's EEO Complaint and so necessarily would have been part of the investigation. *See* EEO Complaint, Exhibit 2 to Mot. to Dismiss, ECF No. 19-5 at 3, 5. The second allegation is that on July 12, 2018, the Assistant Inspector General for Investigations issued to Mr. Holston a letter of counseling, which Mr. Holston alleges was meritless. Am. Compl., ECF No. 9 ¶ 59. The EEO Complaint is devoid of any allegations regarding

actions taken by the Inspector General for Investigations. *See generally* EEO Complain, Exhibit 2 to Mot. to Dismiss, ECF No. 19-5. Accordingly, this allegation would not have been discovered during the Agency's investigation.

For the reasons explained above, Defendant's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART** as to Mr. Holston's retaliation claims. Mr. Holston's claim that he was retaliated against when Mr. Lesnevich filed an IAD Complaint on February 8, 2018 was administratively exhausted. Mr. Holston's other retaliation claims are **DISMISSED**.

### 4. One of the Discrimination/Hostile Work Environment Claims Was Not Administratively Exhausted

Defendant argues that two of Mr. Holston's discrimination/ hostile work environment claims were not administratively exhausted because they were not included in the EEO Complaint and are not like or reasonably related to the claims presented there. Def.'s Mot., ECF No. 19-1 at 13. The claims are: (1) the March 6, 2017 inquiry regarding desk audit procedures after learning that two of Mr. Holston's white peers were promoted to GS-14, leaving Mr. Holston at the GS-13 level, *see* Am. Compl., ECF No. 9 ¶¶ 40-21; and (2) during the 2017-2018 timeframe, Mr. Lesnevich engaging in pattern and practice of disclosing to Agency employees private, sensitive personnel and other confidential information about Mr. Holston, *see id*. ¶¶ 43-44.

Again, the Court's analysis "centers on whether the allegations that were specifically put before the agency and the new allegations the plaintiff seeks to litigate constitute the same cause of action and are factually similar such that they would be discovered during the agency's investigation." *Mount*, 36 F. Supp. 3d at 85-86. The Court is persuaded that the allegation about discriminatory non-promotion is "too different in kind" from the allegations in the EEO Complaint to have been discovered during the Agency's investigation because there is no allegation regarding Mr. Holston being treated differently based on non-promotion. *Redding*, 327 F. Supp. 3d at 140. However, the allegation about Mr. Lesnevich's pattern and practice of disclosing private, sensitive, personnel and other confidential information about Mr. Holston to other Agency employees is factually similar to the allegations involving Mr. Lesnevich discussing Mr. Holston with other managers and Mr. Holston's co-workers. EEO Complaint, Exhibit 2 to Mot. to Dismiss, ECF No. 19-5 at 5. The Court therefore concludes that the allegation would have been discovered during the Agency's investigation. Accordingly, Defendant's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART** and the first claim discussed above is **DISMISSED.**

**B. Mr. Holston Conceded That He Failed to Plead Adverse Action For His Remaining Retaliation Claim**

Mr. Holston's remaining retaliation claim is based on Mr. Lesnevich filing an IAD Complaint against him on February 8, 2018. Am. Compl., ECF No. 9 ¶ 54. Defendant argues that Mr. Holston failed to adequately allege facts such that this could be considered an adverse employment action. Def.'s Mot., ECF No. 19-1 at 9-14; Reply, ECF No. 22 at 11, 12. Mr. Holston failed to respond to this argument in his opposition briefing, incorrectly stating that Defendant's only challenge to the retaliation claim was on exhaustion grounds. *See* Pl.'s Opp'n, ECF No. 21 at 25. Accordingly, the Court treats this argument as conceded. *Mjema v. United States*, 881 F. Supp. 2d 89, 93 n.2 (D.D.C. 2012) (citing *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002)); *Ali v. D.C. Ct. Servs.*, 538 F. Supp. 2d 157, 161 (D.D.C. 2008).

## C. **Mr. Holston Alleges Sufficient Facts to Support a Hostile Work Environment Claim[5]**

To state a claim under Title VII based on a hostile work environment, a plaintiff must allege facts establishing that his "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993) (citations and internal quotation marks omitted). He must therefore establish that "(1) he ... is a member of a protected class; (2) he ... was subjected to unwelcome harassment; (3) the harassment occurred because of the plaintiff's protected status; (4) the harassment was severe to a degree which affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassment, but nonetheless failed to take steps to prevent it." *Peters v. Dist. of Columbia*, 873 F. Supp. 2d 158, 189

---

[5] Mr. Holston argues that his allegations support his "remedial hostile-environment constructive discharge claim," Pl.'s Opp'n, ECF No. 21 at 27-28; as well as a retaliatory hostile work environment claim, *see id*. at 28-30. However, and as Defendant points out, Mr. Holston's Amended Complaint does not allege either claim. *See generally* Am. Compl., ECF No. 9. Accordingly, the Court need not address Mr. Holston's arguments. See *Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 87 n.4 (D.D.C. 2010)(noting that a "plaintiff may not amend [its] complaint by the briefs in opposition to a motion to dismiss").

(D.D.C. 2012). In evaluating these factors, the "court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008).

This standard is a demanding one, as Title VII is not intended to function as a "general civility code" that regulates the "ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998). "Although a plaintiff need not plead a *prima facie* case of hostile work environment in the complaint, the alleged facts must support such a claim." *McKeithan v. Boarman*, 803 F. Supp. 2d 63, 69 (D.D.C. 2011) (citation and internal quotation marks omitted).

Mr. Holston argues that he has stated a claim for hostile work environment because: (1) as an African American, he is a member of a protected class; (2) the harassment was unwelcome because he complained about it on at least four occasions; (3) he was the only African American male within Mr. Lesnevich's line of supervision and the only employee experiencing

harassment; and (4) the harassment consisted of:[6] (a) Mr.
Lesnevich's Privacy Act violation and his disclosure to Mr.
Holston's peer alleged improper acts by Mr. Holston, (b)
threatening to report Mr. Holston to IAD after the July 17, 2017
restaurant incident, (c) Mr. Lesnevich's disclosure of improper
personnel information, (d) the Agency's denial of Mr. Holston's
request for voluntary transfer, (e) unfounded threat to report
Mr. Holston AWOL, (f) Mr. Lesnevich discussing with other
managers how to target Mr. Holston for disciplinary action on
January 23, 2018, (g) disregarding Mr. Holston's IAD complaint,
and (h) Mr. Lesnevich's filing of a meritless IAD Complaint
against Mr. Holston. Pl.'s Opp'n, ECF No. 21 at 25-26. Mr.
Holston further argues that he has alleged sufficient facts to
establish that his employer was on notice and failed to take
steps to address the harassment. *See id*. at 27. Finally, Mr.
Holston argues that as a result of the abusive working
environment, he was compelled to obtain medical treatment and
miss time from work. *See id*.

Defendant disputes that Mr. Holston has stated a claim for
hostile work environment, arguing that: (1) the alleged acts
were not sufficiently severe or abusive enough to constitute a

---

[6] The Court excludes from this list the claims the Court has
dismissed on exhaustion grounds. *See supra* section III.A.1, 2,
3.

hostile work environment; and (2) his allegations are insufficient to plead that any abuse was because of his race.

Defendant posits that that the allegations "consist of discrete instances of alleged discrimination or retaliation," *Williams v. District of Columbia*, 317 F. Supp. 195, 202 (D.D.C. 2018); arguing that courts in this Circuit "are reluctant to transform mere reference to alleged disparate acts of discrimination against plaintiff into a hostile work environment claim," Reply, ECF No. 22 at 8 (quoting *Williams*, 317 F. Supp. at 202). Defendant further argues that "the facts alleged are not 'sufficient to show that those decisions were part of a severe and pervasive patterns of harassment.'" *Id.* (quoting *Outlaw v. Johnson*, 49 F. Supp. 3d 88, 92 (D.D.C. 2014).

To support this claim, Mr. Holston relies on the same allegation that he relied on for his now-dismissed discrimination claim. While courts in this Circuit are reluctant to bootstrap discrete acts into a hostile work environment claims, they have permitted a plaintiff to do so when the "discrete acts that the plaintiff claims .... are actionable on their own," are "sufficient to show that those decisions were part of a severe and pervasive pattern of harassment." *Outlaw v. Johnson*, 49 F. Supp. 3d 88, 92 (D.D.C. 2014). The Court is persuaded that Mr. Holston has adequately alleged a hostile work environment claim here.

Taking the allegations described above to be true, construing them in his favor, and making all inferences in his favor, as the Court must at this juncture, Mr. Holston has alleged that after coming under Mr. Lesnevich's management, he went from being a long-term, valued federal employee who was the recipient of numerous honors and awards, to being subjected to harassment in a variety of ways after Mr. Lesnevich became his supervisor. The harassment resulted in Mr. Holston needing medical care and medication after being diagnosed for the first time in his life, with "physical and mental train related to work," palpitations, hypertension, and abnormal electrocardiogram, and his ultimate retirement seven years earlier than he had planned. Accordingly, the Court is persuaded that Mr. Holston has sufficiently alleged facts that "were part of a severe and pervasive pattern of harassment" and that he has therefore stated a claim for hostile work environment.[7] *Cf. Doe 1 v. George Washington University*, 369 F. Supp. 3d 49, 69-73 (D.D.C. 2019) (denying motion to dismiss hostile work environment claim); *Bergbauer v. Mabus*, 810 F. Supp. 2d 251, 260 (D.D.C. 2011)(denying motion to dismiss hostile work environment claim).

---

[7] For these reasons, the Court is unpersuaded by Defendant's arguments that the allegations are conclusory and are not adequately connected into a coherent claim.

Mr. Holston's allegations are distinguishable from the cases upon which Defendant relies. In *Williams*, the plaintiff alleged that "denying him the opportunity to negotiate for his pay; mishandling his paperwork; requiring him to re-apply for the position he was hired for; terminating any interviews he had for that position; and subsequently terminating his employment" which the Court found insufficient to create a hostile work environment. *Williams*, 317 F. Supp. at 202. These allegations are entirely distinguishable from the "severe and pervasive pattern of harassment" Mr. Holston alleges. Similarly, in *Stewart v. Evans*, 275 F.3d 1126 (D.C. Cir. 2002) the Court of Appeals for the District of Columbia Circuit affirmed the district court's denial of hostile work environment claim that was based on a single incident. *Stewart*, 275 F.3d at 1132-34. Here, Mr. Holston alleges numerous incidents. Finally, in *Horsey v. U.S. Dep't of State*, 387 F. Supp. 3d 97 (D.D.C. 2019), the plaintiff alleged a hostile work environment based on, among other things: (1) violation of certain rights; (2) requiring him but not his white counterparts to undergo an evaluation; and (3) subjecting him to emails, phone calls, and letters, threatening [his] employment." 387 F. Supp. 3d at 111. The court found these allegations to be insufficient because the plaintiff's pleading did not "describe the volume, nature, or content of the alleged 'emails, phone calls, and letters' that [plaintiff] allegedly

26

received." *Id*. Here, Mr. Holston has provided detailed allegations supporting his hostile work environment claim.

With regard to whether Mr. Holston has sufficiently alleged that he was subject to abusive treatment because of his race, Mr. Holston argues that because he "was the only employee subjected to such treatment and the only African American male within the employ of the [relevant managers]—all of whom are white—th[e] Court can reasonable infer that the harassment occurred because of [Mr. Holston's] race." Pl.'s Opp'n, ECF No. 21 at 26-27. Defendant argues that Mr. Holston's conclusory allegation is insufficient. Def.'s Mot., ECF No. 22 at 10. However, the authority upon which Defendant relies is inapposite. In *Massaquoi v. District of Columbia*, 81 F. Supp. 3d 44 (D.D.C. 2015), the Court concluded that the plaintiff was not entitled to an inference of discrimination based on disparate treatment because there were no allegations that the plaintiff was treated differently than similarly situated employees who not of the same national origin, gender or religion. *Massaquoi*, 81 F. Supp. 3d at 49. Here, Mr. Holston has alleged that he was treated differently from his white peers. *See e.g.*, Am. Compl., ECF No. 9 ¶¶ 42, 56, 72. Accordingly, he has sufficiently alleged that he was subject to abusive treatment because of his race.

For these reasons, Defendant's Motion to Dismiss as to the hostile work environment claim is **DENIED.**

## IV. Conclusion

For the reasons explained above, Defendant's Motion to Dismiss, ECF No. 19-1, is **GRANTED IN PART AND DENIED IN PART**. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:     Emmet G. Sullivan**
           **United States District Judge**
           **September 20, 2022**